MERTON AND BERDINA WOOD, ET AL., PLAINTIFFS AND RESPONDENTS, *v.* CITY OF KALISPELL, ET AL., DEFENDANTS AND APPELLANTS.

No. 9788.
Submitted April 9, 1957. Decided May 6, 1957.
Rehearing Denied May 31, 1957.
310 Pac. (2d) 1058.

Mr. Merrit N. Warden, Kalispell, for appellant.

Messrs. Haswell & Heckathorn, Whitefish, for respondents.

Mr. Warden and Mr. Frank I. Haswell argued orally.

MR. JUSTICE CASTLES:

This is an appeal from a judgment and decree declaring a special improvement district null and void and enjoining the defendants perpetually from further proceedings in connection therewith.

Plaintiffs, some sixty-nine in number, filed suit against the City of Kalispell, its mayor, councilmen and city clerk asking that an improvement district be declared null and void and that the defendants be enjoined from proceeding with the creation of such special improvement district and from issuing and selling bonds connected therewith. After all pleadings were made, it was stipulated between the parties that the case be submitted on the pleadings inasmuch as there was no dispute as to the facts.

It appears that the defendants attempted to establish a special improvement district for the purpose of raising funds with which to participate with the state highway department in improving a city street, which is also a state highway, under the Federal Aid Road Act where the defendant city did not intend to award the contracts for the work to be done. It was admitted that the estimated cost of the proposed project was $440,000, and that the defendant city was to participate in the cost to the extent of 25 percent, or $110,000.

It was agreed that there were only two issues: (1) Did the City of Kalispell have jurisdiction to create the proposed special improvement district where notice of intention to create it was not mailed to all property owners in the district proposed to be assessed to pay the cost of the improvements? (2) Is a city empowered to participate in a federal aid highway program through use of special improvement district proceedings to raise the city's share of the total cost of the improvements?

It was admitted in the pleadings that five persons who were the owners of property within the proposed special improvement district were not mailed notices of intention to create the district. Three of those five had signed waivers and consents to create the district. One other of the five did not participate in this action. Thus, so far as concerns this opinion, only one person, plaintiff Pettibone, out of the sixty-nine plaintiffs failed to receive notice. It appears from the record that notices were mailed to four hundred twenty-four property owners, but that the four hundred twenty-fifth one, plaintiff Pettibone, was not mailed a notice.

The reason why one property owner was not served does not appear, and it was assumed by counsel and the district court that it was either through inadvertence or mistake and not due to any bad faith.

The trial court made a finding of fact that one property owner had not been mailed a copy of the notice required by law and pursuant to statute. From this finding, it made a conclusion of law that the formation of the proposed special improvement district was invalid.

The trial court also made a conclusion of law that there is no legal objection to the city forming a special improvement district as proposed in conjunction with the state highway commission and the Federal Bureau of Public Roads. On this latter conclusion, the plaintiffs, respondents herein, have cross appealed and cite this conclusion of law as error.

R.C.M. 1947, section 11-2204, in dealing with the establishment of special improvement districts provides in part: "* * *

the council must give notice of the passage of such resolution of intention, which notice must be published for five days in a daily newspaper * * *'' and then provides that "a copy of such notice shall be mailed to every person, firm, or corporation, or the agent of such person, firm, or corporation having property within the proposed district at his last known address, upon the same day such notice is first published or posted."

The question presented on the first matter then is whether or not failure to mail notice to a single individual property owner, will cause a lack of jurisdiction for the municipality to proceed with the special improvement district.

This court in Billings Bench Water Ass'n v. Yellowstone County, 70 Mont. 401, 408, 225 Pac. 996, 998, said:

"The statute [a statute similar to R.C.M. 1947, section 11-2204] explicitly requires notice of the passage of the resolution of intention to create the district, to be given (1) by publication in a newspaper, (2) by posting of a copy of the notice in three public places within the boundaries of the proposed district, and (3) by mailing a copy of such notice to every person, firm or corporation having property within the district, at place of last known residence, 'upon the same day such notice is first published or posted'. Nothing short of a strict compliance with all of these requirements will suffice."

The court also states in that case, 70 Mont. at page 410, 225 Pac. at page 999: "And it is quite generally held that failure to give the notice prescribed by statute in the attempted creation of an improvement district deprives the county of jurisdiction to proceed, and a property owner is not estopped to deny the validity of an assessment, though he makes no objection until after the work is completed. Johnston v. City of Hardin, 55 Mont. 574, 179 Pac. 824; Cooper v. City of Bozeman, 54 Mont. 277, 169 Pac. 801."

And in Scilley v. Red Lodge—Rosebud Irr. Dist., 83 Mont. 282, 304, 272 Pac. 543, 552, this court said in a case involving an irrigation district, "* * * the service of notice as prescribed is jurisdictional as to the determination of the benefits

to be derived and the inclusion of the particular lands in the district by reason of benefits derived, and, originally, the statutory requirements in this regard must be fully met before the court can proceed.'' Citing Billings Bench Water Ass'n v. Yellowstone County, supra; In re Gallatin Irrigation District, 48 Mont. 605, 140 Pac. 92; Fallbrook Irrigation District v. Bradley, 164 U.S. 112, 17 S. Ct. 56, 41 L. Ed. 369.

From the above-quoted statements of this court, it would appear that service of notice in strict compliance with the statute was jurisdictional, and that until it was done no jurisdiction would attach to the municipality. However, in each of the cases quoted from, the fact situation was such that it applied to *one owner only* and did not invalidate the entire proceeding. In the Billings Bench Water Ass'n v. Yellowstone County case, the court observed that it was not an action to invalidate the entire district. The court held that service of notice was jurisdictional as to the sole owner who did not receive notice. In the Scilley v. Red Lodge—Rosebud Irr. Dist. case, the court found that the order of creation, in so far as it relates to the inclusion of plaintiff's land (only), is void for want of jurisdiction.

It seems clear then, that as to the plaintiff, Pettibone, because of failure to mail the notice of intention as required by the statute, the defendants were without jurisdiction. But, this leaves unanswered the proposition of whether the municipality was without jurisdiction as to the subject matter itself, i. e., the improvement district, because of the failure to serve one property owner.

Before discussing this latter proposition, it should be pointed out that this action arose *before* the municipality proceeded with either the selling of the bonds or with the work. No doctrine of laches, estoppel, or implied waiver can be considered here. Appellant municipality asserts that substantial compliance with the statute is sufficient, and that the mailing of the notice to four hundred twenty-four out of four hundred twenty-five owners was substantial compliance. The fallacy of this assertion lies in the fact that the statute is mandatory. It

uses the words "must be published" and "shall be mailed." The legislature has spelled out the manner in which the municipal governing body obtains jurisdiction. Until it complies with the requirements of the statute, it does not have jurisdiction to proceed. One of those requirements is that, "* * * a copy of such notice shall be mailed to every person, firm, or corporation, or agent of such person, firm, or corporation having property within the proposed district at his last known address, upon the same day such notice is first published or posted."

R.C.M. 1947, section 11-2206, provides that the filing of protests by 40 percent of the owners of the area of the property (in extended districts) will stop the proceedings. Conceivably plaintiff Pettibone could have been a large property owner whose protest would have affected the outcome. It does not appear from the record just what effect her protest might have had. We think the legislature intended just what it said that, "a copy of such notice shall be mailed to every person, * * *."

As was said in Johnston v. City of Hardin, 55 Mont. 574, 581, 179 Pac. 824, 825:

"The statutes above not only qualify and limit the powers which the city council may exercise, but they define with particularity the mode in which the restricted authority may be used, and compliance with their provisions is the *sine qua non* to the creation of a special improvement district for making improvements the expense of which is to be a charge against the property included. Shapard v. City of Missoula, above [49 Mont. 269, 141 Pac. 544]; Cooper v. City of Bozeman, 54 Mont. 277, 169 Pac. 801. The statutes define the contents of the notice and the manner of service, and declare that the giving of this notice is one of the steps necessary to be taken before the city council is clothed with jurisdiction to order the work done, and no argument, however specious, can excuse a failure to observe their mandates."

Rules of construction of such a statute were discussed in Chief Justice Adair's special concurring opinion in Dietrich v.

City of Deer Lodge, 124 Mont. 8, 17, 218, Pac. (2d) 708, and need not be repeated here.

The failure to serve one owner or any number of owners was not substantial compliance with a statute which says, "shall be mailed to *every* [owner]."

The second issue, raised by respondents on their cross-appeal, whether or not there is legal objection to a city forming a special improvement district in conjunction with the state highway department and the Federal Bureau of Public Roads will next be considered. This court recognized the power of a city to proceed in this manner in Dietrich v. City of Deer Lodge, supra.

R.C.M. 1947, sections 11-2201 and 11-2202, authorized the creation of special improvement districts in connection with the establishment and improving or changing of streets. R.C.M. 1947, section 11-2214, provides that the city council may pay for the work, or a part of it, out of any funds in its hands available for that purpose and may assess the balance against the property in the district.

The provisions of the Federal Aid Road Act require that contracts for projects under that act must be let by the highway commission of the particular state. 39 Stat. 355, approved July 11, 1916, as subsequently amended and supplemented, 23 U.S.-C.A. section 1 et seq. The legislature of Montana, by R.C.M. 1947, section 32-1609, has assented to the terms of the Federal Aid Road Act and has authorized the highway commission to do all "things necessary or required to carry out fully the cooperation contemplated by said act of congress * * * relative to the construction and maintenance of roads and highways in the State of Montana."

R.C.M. 1947, section 32-1608, provides in part: "All contracts for work on state highways shall be let by the state highway commission." The project in the instant case involves two state highways, or more particularly, a portion of each of two state highways that is also used as a city street. Contracts for such work clearly must be let by the state highway commission.

This court, in State ex rel. State Highway Comm. v. District

Court, 105 Mont. 44, 69 Pac. (2d) 112, and in Bidlingmeyer v. City of Deer Lodge, 128 Mont. 292, 274 Pac. (2d) 821, recognizes that a city is but a subdivision or agent of the state and that by assenting to the provisions of the Federal Aid Road Act the legislature, as the principal, has withdrawn some of the powers previously given to its agent, the municipality.

The legislative intent is clear that a city may create a special ██ improvement district for street improvements where the street is also a part of a state highway and that, in such instance, the contracts for the work to be done must be awarded by the state highway commission.

For the reasons stated the judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES BOTTOMLY, ANGSTMAN and ADAIR, concur.